Good morning, ladies and gentlemen. This is the time for argument on behalf of the United States Justice Commission. The appellant may proceed. Judge Gould is able to be with us in the courtroom, but he will participate in the decision. And we'll hear from the appellant to keep in the question that you both parties, that you don't have to feel compelled to use all of your time. Thank you, Your Honor. May it please the Court, counsel Kendra Matthews with Ransom Blackman on behalf of Defendant Mr. Grisel. With me at counsel table is Stephen Sadie, the Chief Deputy of the Oregon Federal Public Defender's Office. It's my intention to address with this Court the issue that it raised in its supplemental briefing and caused it to go bring the case en banc, whether or not United States v. Cunningham should be reversed. I'm hoping to leave time to yield to Mr. Sadie to argue and address with the Court the issue that is raised in Mr. Grisel's brief regarding the statutory interpretation of the Armed Criminal Act. My hope is that between the two of us, we will leave time for rebuttal, but we'll have to see. Turning to the issue of Cunningham, defendant contends that this Court's decision in Cunningham was wrongly decided, is inconsistent with the Supreme Court's decision in Taylor and this Court's decision in Sparks, and that Gonzalez v. Juanez-Alavarez, the recent Supreme Court decision, does not undermine that conclusion. In that recent Supreme Court case, the Court explicitly affirmed Shepard and Taylor and noted that those cases involved situations in which a statute plainly involved language that was beyond the generic definition of burglary in Missouri and in Massachusetts. Oregon is the same way. When you look at the definition of building, it is, in addition to its ordinary meaning, building includes and it lists a series of places, many of which, including vehicles, are outside the generic definition. Accordingly, we would contend that Cunningham is simply wrongly decided. Kennedy, why can't we decide in Cunningham that we simply go to the next step, the modified categorical approach, look at the judicially noticeable documents and uphold the enhancement under Cunningham as Taylor directs us to do? I think in this case, Your Honor, there are two responses to that. First, yes, the Court should reverse Cunningham. And then as to the question of relief, we would contend that the judicially noticeable facts do not permit that. But secondly, we contend that this case should be remanded to district court under United States v. Matthews for a hearing on the modified categorical approach. And that is something different than was in my briefing. But why do we need a remand? And we can just look at the documents that are already in the record and see that he burglarized the gas station and other buildings and conclude under the second level or modified categorical approach that that meets the statute. Well, I think, Your Honor, that we would disagree with the characterization of, for instance, taking the gas station. Take Ted Coleman's question either way. We could also look at them and easily conclude that they don't meet the definition. But one or the other, I think this question is, is there any reason to remand? There's an alternative in between, which is to remand to the panel and have the panel do it. So there are three things that could be done. One is we could decide the question under the modified categorical approach. Two, we could remand to the panel. Or three, as you suggest, we could remand to the district court. Do you have a particular preference? Or do you think anything is required of us? Or is it our option of which of the three to do? Defendant's preference would be to win, have the court find that five or not. But moving immediately, yes, moving immediately beyond that, I think that this situation warrants remand to the district court because, and there may be an intervening minor with that, but just looking at the Cunningham question, because in Oregon it has been established for 15 years that Cunningham is a the game. And if you look at the record below, the government sentencing memorandum, they did not address the modified categorical approach. They simply submitted the seven convictions. And if we take the example of conviction number one, the gas station, the charging instrument lists a street address. The restitution order identifies it as a Texaco. Now, on a factual basis, if we were before the district court arguing that, or before this Court if it's going to take it, we would say a Texaco is certainly a business that could have all sorts of structures that would not meet the generic definition of burglary, but more precisely. Like what? It could have. The generic definition of burglary says a building or other structure, right? It does say that, Your Honor. And in United States v. Sparks, this Court said that the structure must accommodate a person. It must be a space designed for someone to go into and, you know, not a kiosk, not a display outside that has, you know, storage bin, a storage kit. But you have a number of indictments here that charge that he unlawfully and knowingly entered into a building located at X address with the intent to commit the crime of theft therein. Why isn't that building a building? If you had a warrant to search a building located at a street address, you couldn't have entered it.  There's no warrant to enter a building, but you could enter it nearby. Why don't we assume the same sort of common sense reading that when there's a street address and he's charged and he's guilty to entering a building located at a street address with the intent to do something inside of it, why isn't that the end of the game? Well, I think, Your Honor, that it is a two-part answer, which is that the definition here is in a separate statute. When you get a warrant to enter a building, the judge is using its common sense. Regardless of the definition, though, a boat doesn't have a street address. It's not inside somebody's house. You see what I'm saying? I mean, those are theoretical possibilities. But, for instance, on the charging instrument for the 1900 block, it says he entered the 1900 block of a street, and that is. But you don't we don't need to find all of them to have been generic burglaries for this to be a pill, do we? We only have to have the minimum number. No. You need to find three. Three out of the many. Out of the seven. And I guess I'm trying to answer the Court's question that if it lists an address, for instance, the one that lists an address that says the Hendricks property, and it says in the charging language, because the charging language simply tracks the statute, entered a building to with the Hendricks property, you know, the street address Hendricks property. And not all that general. At least three of them are quite specific. The only two, I believe, that identify a street address and then would be the Skipper's restaurant and then the Mercantile Paisley, Paisley Mercantile, I believe, Your Honor. And our contention. Because you're saying that just the street address itself is not enough. It has to say the name of the building as well? I think that, Your Honor, because I think that even in the case in which this Court said we looked at the address, what the Court said was we looked at the address, this was a jewelry store. And a jewelry store is a building that, looking at common sense, you can say that. But let's change things. The statute actually says that building means it's ordinary language and other things. And other things. So, yes, meaning that it recognizes that word building has an ordinary meaning. And why shouldn't we assume that what's in these allegations is the ordinary meaning? Because the ordinary meaning, and then you move from the ordinary meaning of structure and building and a building being a walled structure with a roof. Well, what do you make of the one which is the burglary of a Little League stand that's a steel chocolate bar? That Little League stand is described as a building located at the 1900 block of South Third Street, known as the Little League concession stand. Would that qualify? We would contend that that would not qualify. That, in fact, there is no way for this Court to know whether that is a concession stand, that someone stands behind and unlocks the padlock to sell items. There's just simply no way to know. It's the 1900 block. It's a concession stand. There's no way to know that that's a structure that someone can enter and move about and was intended for that purpose. So it would have to be that he unlawfully entered the Reinhart Castle at 1901 Smith Way? Is that your construction of the law? It would be sufficient under your interpretation of the Oregon statute if that's what the information charged. If the information charged he entered? That he unlawfully entered and remained in the Reinhart Castle located at a specific street address. With the intent to commit the crime therein. Wouldn't that be sufficient? That charging instrument would be sufficient. And then if the guilty plea gave you a basis to conclude that he had pled guilty to the elements alleged in that charging instrument, that's correct. But if the court has before it a charging instrument that says that, and a factual basis that recites what the charging instrument says, and the defendant enters a plea of guilty, what more does the court need to look at in order to conclude applying a common sense approach under the law that he committed the burglary of a building? I think, Your Honor, there are two things. One is that the charging instrument say entered a building and then lists an address or to a concession stand. And I freely concede that the court has said to apply common sense in looking at that. Our contention is that applying that common sense, you don't have enough information to know that this is a structure. But what's missing, let's go back to my hypothetical, the castle. What's missing from that description that you believe renders that particular hypothetical inadequate to conclude under the modified categorical approach that the crime of burglary occurred within the meaning of the enhancement statute? I don't disagree under that hypothetical that if it alleged that he entered a castle and listed the address, I don't think that I have, by saying that, given up the argument that what is alleged here, because it uses the term building and then, which is a statutorily defined term, that expands what building could be. So is the answer to my question no? The answer to my question, your question, was that there is nothing that would stop the court under your hypothetical. So that would be good enough. That would be good enough. Counsel. And my follow-up to that was that I don't think that that is what we have here, and that's all. Counsel, I cannot understand so far the purpose of the inquiry we're making. And it's not particularly your fault. Frankly, I think it's the fault of the author of Taylor. I knew what common law burglary was. It had to be in a dwelling in the nighttime. It didn't matter if it was a stone castle or a sheepherder's wagon, if somebody slept there. It made it a dwelling, and the idea was to protect people from midnight terror and avoid the violence that comes of entry into dwellings in the nighttime. Simple. Clear. Generic seems to be a word invented in Taylor. It's not the model penal code definition. It's not the various state statutory definitions. So in order to make any sense of it, I have to know its purpose. I can't figure out the purpose. The three little pigs had three kinds of dwellings, but at least one of them wouldn't be a building or structure. I don't know why that matters, but evidently it does. I can't make sense of it without a purpose. What is the purpose of this inquiry? That purpose will help me decide whether, for example, if the Texaco is just a kiosk where an hourly employee takes your money or credit card and sells you cigarettes and gum, whether that's a building. They did seem to exclude booze in Taylor, but I don't know if they meant something like a concession booth at a Little League stand or if they meant something like a booth that people camp out in on some holidays. I don't know what they meant because I don't know what the purpose is. Do you know? Other than to say, Your Honor, and simply from reading Taylor as well, that they were trying to craft something that I think fit the majority of the State statutes. Not exactly. The State statutes are real, real broad. They basically turn all kinds of attempts that involve entries into anything, into burglaries. A lot of what used to be larcenies and a lot of what used to be trespasses. And the Supreme Court didn't do that, but they also said it doesn't really matter that it's not as dangerous as burglary and dwelling in the nighttime. So I'm asking you, you must have thought about this more than me. Make a coherent statement of some coherent purpose so that we can make sense of what a building or structure is. Well, I think that it's difficult to do that without going back to the opinion itself in which they did talk about the purpose of burglary as to, including burglary, as that it is more likely to involve people, more likely to involve the potential risk for harm. But Taylor specifically says, no, we're broader than that. It says, no, burglary is broader than that, but I believe that's what they say the purpose of including burglary as opposed to larceny and other petty thefts includes. Under Arkin law, a vehicle – under Arkin law, is a vehicle that says on the side, you know, Joe's Carpenter Shop, and is used to carry carpentry material, a vehicle that's adapted for the conducting of business? It is. While it's driving around or whether it's standing still? Is that a statement of fact, or is that an argument that it would be? I – it is, as I'm not a prosecutor, an argument that it would be, but I believe that it is clearly a statement of fact under the way Oregon laws are interpreted, which is that you – What does the statute say about a vehicle? Is that a cause that's for – that is converted or maintained for the use of dwelling or for a business purpose? For a business. And in State v. Nolan, the Oregon Court of Appeals looked at the definition of building, and they didn't look to the purpose of burglary or what you might want to accomplish. They simply looked at the dictionary definition, and they said, well, business is something you do to make money and adapt is simply making a change to accommodate that. And they said we see nothing that requires it to be permanent. We see nothing that requires it to be significant. It is simply an adaption for business. And that is why I believe that under Oregon law, it certainly is prosecuted at the State level. And it does get back to Duenez-Alvarez in the sense that if the court is looking for examples, I think that there are only five statutes or five cases interpreting building in Oregon law. Well, are any of them – and you're right on the point I was getting at. Are there any of those cases that suggest that Oregon would apply the boat and the vehicle aspects of – in a realistic probability sense? And I think that – It's something that's other than generic, meaning a dwelling or using it for business. Well, I think that using it for business is a requirement. Sure. I think under the Supreme Court's opinion, as I understand it, the cell phone example used in Sparks wouldn't cut it. No one obviously does cut it because there you had a vehicle that was totally modified to accommodate an ongoing business kind of operation. So would Oregon apply the Sparks hypo, or is it always going to stick with the Nolan example, and does that matter? I think it doesn't matter because of the plain language provision of even Duenez-Alvarez in which the court, when it begins that significant paragraph about finding examples, says it requires more than legal imagination applying to the State's statutes. So I think, number one, you can stop there if you so choose. Number two, I think – Because the statute itself applies to boats and cars. Yes. And under PGE v. Boley in Oregon, if the text is clear, you don't need to know the purpose, and certainly that's how practitioners employ it. I would expect the Sparks example, my client, to be charged with burglary too, and my efforts to charge bargain to get it out of that. But isn't the question whether under Oregon law, a vehicle adapted for business means you have to be able to go into the business to transact, into the vehicle to transact business, as opposed to somebody using the vehicle in an ordinary vehicle-like way but for business. No, and I think in Nolan, Your Honor, the court gave a lot of language that would indicate, and again, Nolan itself might not be a good example as a device, but its effect is just make suitable by means or changes of modifications, and businesses ordinarily refers to commercial industrial enterprise. We are aware of nothing in the phrasing of the statute that suggests that the legislature intended to adopt anything in the ordinary definitions, and I think then you would expect that if it was a fax machine or something that just is done for the real estate agent, so tempting because they do conduct a business in their car without necessarily inviting customers in, that they would charge it that way. If, however, Duanez-Alvarez calls for a further examples under Oregon law, it is somewhat of a catch-22 for a defendant with this type of case, burglary, because there are hundreds of prosecuted at the circuit court level, and if it is defendant's burden to produce those examples to get to the modified categorical approach, I would submit that an opportunity should be given for a defendant to demonstrate under Oregon law that it is routinely applied that way, and then look at the modified categorical approach. Do you think the fax and Nolan meet Taylor? I would contend that the fax and Nolan don't meet Taylor because it is an unattended trailer truck, and it was only temporarily modified, and there was no indication that it was, you know, anything more than a vehicle. What about State v. Spencer? Where does that fall off? I'm sorry. State v. Spencer. Spencer was the boat. The fishing boat. Yeah. It is a little bit more difficult in Spencer, although I think it is a good example of how practitioners handle it, because they stipulated that it was a dwelling. And it – but it is a fishing boat. It is used. I don't think it would qualify under Taylor, but I do think that this Court's interpretation of it might fit under the modified categorical approach because it is a vehicle adapted for the purpose of a dwelling, and there is a case in which this Court has said if the statute applies to just dwellings, it is narrow enough. Counsel, in your view, do any of the prior second-degree burglary convictions in this case meet the modified categorical approach? The only one, and I would like to try and yield some time to Mr. Sady, but the only case that I think arguably would fit under the modified categorical approach would be the Skipper's Restaurant example, which is number two, exhibit number two of the government's. But in that case, the fact that it was a Skipper's Restaurant does come from the And under Oregon law, a restitution order ordinarily would not be something that was considered by the Court as something, an element of a plea. And it's for that reason that we think we'd want it to go back to the district court if the Court were considering that, because I don't think under Shepard the Court could consider restitution orders as something the defendant and the State Court judge must have understood. With that, because if the Court were to rule against us on Cunningham, I think it would have to address the ACCA statutory interpretation argument. I'd like to yield the balance of my time to Mr. Sady, and I would anticipate that that will probably be the end. Thank you. Mr. Sady. May it please the Court. A fundamental question that needs to be answered in this case is whether there is a constitutional doubt, a grave constitutional doubt regarding application or extension of Almendarez-Torres. This Court has never addressed the question in the context that we have before us today, and that is where the Armed Career Criminal Act requires not only application of Almendarez-Torres, but extension to the sequence of the prior convictions. Because this is a case that's being decided in the first instance because of two Supreme Court cases from 2004 and 2005. Why is sequence an issue? Because in 1988, the Armed Career Criminal Act was amended to include the requirement that each of the prior convictions occur on occasions different from one another. In Drecke v. Halley, Justice O'Connor wrote for the majority of the Court stating that a Texas recidivist statute that required both application of Almendarez-Torres and extension to the sequence of those prior convictions raised a serious constitutional doubt that should be avoided if possible. That is a direct instruction. What was the sequential issue in Drecke? In Drecke, they had – it was – he stole a calculator from a Walmart, and the two prior convictions had to be separated temporally. And it turned out that nobody noticed that there was a three-day overlap. Because of the three-day overlap, there weren't prior – two prior convictions under the statute. Therefore, that was a fact that had never been found by a jury, that had never been charged in a grand jury, and so it raised all the questions that are lurking underneath Almendarez-Torres. So for the – First, is it one of the concerns of Almendarez-Torres, or Apprendi rather, the fact that the defendant never had an opportunity to have a jury consider that fact? Here we are looking at a conviction which may well include facts that the defendant obviously stipulated to when he entered his plea. So how is he being deprived of a constitutional right if he previously admitted that the fact was true? Because this is a new fact that has never been before a jury, never been charged, and that is, what was the sequence? Were they – did they occur on occasions different from one another? For example, if three burglaries are convicted from one night's activities, there's been no finding in front of a jury about whether those are on – We don't have that problem here. We can look at the date of the charging instruments because we're dealing with separate burglaries. That's why in the 28J letter I submitted the citation to Clark v. Martinez where Justice Scalia instructs that in applying the doctrine of constitutional avoidance, you go to the least common denominator. It's a case that cuts closest to the constitutional problem. So that's why I believe that regardless of the fact of this particular case, the situation where you do have, for example, three drug transactions in a night, are those requisite for the armed – going from 10 years to life without parole, or does a jury have to find that? Does that have to be protected by the interposition of a grand jury between the citizen and the government before that can occur? So we don't just have Drecke v. Halley holding that you – that not only the extension, which we're discussing, but just the application of Almendarez-Torres raises a serious constitutional doubt to be avoided if possible. If I understand the argument correctly, the argument is the only thing Almendarez-Torres permits us to conclude is that there was a conviction. But we can't look at the date to determine whether it was prior to the date on which we are going to now enhance this defendant's sentence. Is that your argument? That is part of the extension of the Almendarez-Torres argument, which is also supported by the – all the cases that have applied recidivist – to recidivist statutes, for example, pattern of criminal conduct. Those were also submitted in the – in the 28J letter, as were – as Korngold – Korngaard from this Court's applying recidivist principles and those findings, those factual elements that have not been found by a jury, that there's no interposition of a petty jury before that person is convicted of having convictions with those characteristics. Both Apprendi and Korngaard in this Court make a very clear distinction between the facts of a conviction and facts about or inferences drawn from the conviction. Those are factual matters upon which the Sixth Amendment rights apply. Alito, you still haven't adequately answered my question about the distinction between a defendant who has admitted to those facts, assuming that they are judicially noticeable facts, as being different from a case where the fact was never admitted to by the defendant, but a jury has to determine whether or not that fact exists. Sheppard basically stated, for Sixth Amendment purposes, that the plea colloquy is coextensive with the jury instruction. So I don't believe that there is a necessary distinction based on that. But the principle of Drecke v. Halley has followed also in Sheppard itself in the more limited question, saying that the constitutional avoidance applied simply to the question of whether a prior conviction alone. Well, you wouldn't contend in the middle of a jury trial that if the defendant stipulated to a fact that the jury would still have to find that fact, would you? That would – I believe that in Taylor they discuss how different elements are established and that you can do that from jury instructions, and I believe stipulations would be. My question is, under your view of Apprendi, if a jury has to determine all of the facts, and if in the middle of the trial the defendant stipulates to a fact, the jury doesn't have to then find that fact independently, does it, if the defendant has stipulated? It cannot – whether or not it was stipulated, pled guilty to, or any other – if that fact is later used as an ingredient of an offense to increase the statutory maximum, under those circumstances, that would raise the constitutional question of, is Almendarez-Torres still good law? Is Almendarez-Torres' application a violation? And because the Armed Career Criminal Act says nothing about how it should be pled, how it should be proven, that this Court, as it did in Buckland, is absolutely free and mandated by the Supreme Court to construe the statute, reinterpret it, reject the prior ACC precedent that relied on the erroneous views and did not apply Drecke and Shepard, and therefore – But even if we did that, why isn't – even if we said, yes, Apprendi applies, why doesn't this meet Apprendi? I guess that's the question. If you have an accusation and a mission, why isn't that enough? Key question. And that is, as what Blakely said, I believe, eight times, was when you're looking at these types of Sixth Amendment questions, you look to the plea colloquy. We're not worried about what comes up at a sentencing hearing. It's the formality, the dignity, the Sixth Amendment issues are at the finding of guilt. At the finding of guilt, Mr. Grizzle said nothing about his prior convictions. He said nothing about them being violent felonies. He said nothing about the sequence of those convictions. And under those circumstances, he has not made any admission, and therefore, he has only been found guilty of a 922G with a maximum of 10 years. Thank you. Can I please the Court? I'm Stephen Pfeiffer representing the United States. I was the attorney for the government in the Cunningham case, so I take sort of a special interest in that case. And I'd like to spend most of my time arguing why that case should be, continue to be good law. It's been good law since 1990 and should continue. Counsel, could you help me on the inquiry I directed to your adversary? Yes. What is the purpose of the word generic and the distinction between generic and non-generic burglary? As I mentioned to your adversary, I understood the common law and I understood what it was for. So it was real easy to decide under the common law that even if all anyone had was a two-sided tent, if that's where he regularly slept, entering into it without permission was burglary. Right. Generic is a brand-new word. I think what Justice Blackman was trying to do was to look at the whole panoply of burglary statutes all over the country, not individually but as a whole, and apply to them the purpose of the statute according to Congress. And the reason it's a violent felony is that there's a high likelihood of violence if certain spaces are encroached upon. Right. Because in Taylor, he says generic burglary is a whole lot broader than the kind that threatens violence or else Congress wouldn't have had to add that last phrase about or otherwise threatens violence. The purpose was to restrict it to buildings or their equivalent, I would argue, in which you can expect to find people, whether it's their dwelling or their business or they have armed guards or night watchmen or whatever it is, but there's a high likelihood of violence as a result of breaking into those places. When you say equivalent of buildings, that's where I have to know the function of this building's term in order to know whether they're equivalent. For example, a phone booth, a kiosk, and a 60-room house are equivalent in the sense they keep the rain off your head. It's not too comfortable or practical to sleep in a phone booth, so nobody's very likely to. It's not comfortable or practical to sleep in a gas station kiosk. We've got a Texaco with a kiosk in my town where all you can do is have the clerk take money and sell chewing gum and cigarettes. No place you can lie down or even sit comfortably. Until I know what the purpose is, I don't know what you mean. I mean, they're built of building materials. They use contractors. They keep the rain off your head. You can't sleep in them. Somebody's likely to be in them during business hours, not likely to be in them out of business hours. Beats me. Well, I think you have to look at what the Supreme Court excluded, specifically excluded automobiles and vending machines. Mr. Pfeiffer, that's exactly my question, though. If you look at page 599 of the court's decision in Taylor, they conclude first that a person has been convicted of burglary for these purposes, et cetera, if a crime, regardless of label, has the basic elements of unlawful or unprivileged entry into or remaining in a building or structure with the intent to commit a crime. Right. And then they go on to say a few lines later, a few states' burglary statutes, however, define burglary more broadly, such as eliminating the requirement that the entry be unlawful or by including places such as automobiles and vending machines that are broader. The Oregon statute includes automobiles. I would argue it doesn't. It includes groups. Pardon me? Say groups. Groups. Right. G-O-O-T-H. You have to look. This is why I submitted. I submitted the additional authorities, because you have to look at how the Oregon courts, Oregon Court of Appeals in particular, has interpreted the burglary statute since 1973 when it was enacted, relying upon the commentary that a building ---- And it's included potato sheds. Yes. It's included semi-tractor trailers and all kinds of objects. Right. And when it included the potato shed, it was very careful to describe what the potato shed was, big enough. Big enough for trucks. For three trucks, several trucks, rather. And potato sheds, people have a misconception about what they are. They're not shacks. In eastern Oregon, potato sheds are substantial buildings. They're structures, not vehicles. What is the harm that generic burglary is designed to protect against, and what is the harm that the Oregon statute is designed to protect against? Well, you can look at the commentary on the Oregon statute. It makes it very clear to protect people who are subject to having their space invaded, basically. That's not the exact terminology that's used. If I have a booth or a tent or a boat, even if it's just a riverboat with no enclosure where anyone can sleep, it's still my space and I'll get mad if it's invaded. But Taylor says those are not part of generic burglary, so that can't be it. Or else the Oregon statute would be too broad. The Oregon statute has been very carefully circumscribed by the cases not to include things that Taylor would exclude. He was convicted of burglary of a snack bar, a Little League snack bar. Well, that's not a burglary. That's the way the statute is applied by Oregon prosecutors. Right. Isn't that good enough? It says it's a building. That's true. Well, I've seen Little League bars not for quite a while, but I used to. For the modified categorical approach, that would be a separate question, whether that would qualify. What do you do with the fact that the statute explicitly says building, in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft, or other structure designed for certain purposes? I'm paraphrasing. But when the statute says, hi, we're including boats and vehicles, why isn't that right there with what the Supreme Court was referring to? In the Taylor case, they were dealing with the Missouri statute that said any, any vehicle, or any boat or rail car or whatever, without any adaptation whatsoever. I would direct the Court to the Sparks case, the part of the Sparks case that deals with the adaptation of a vehicle for accommodation purposes, and why, if the Court were to take that position, that no vehicle can ever count, then motor homes and recreational vehicles and things that people nowadays routinely live in, in some cases, and travel across the country, and they would not qualify as wellings or as buildings. And that's why I think the Sparks case is correct in that sense. The question isn't whether the definition would exclude all vehicles. The question is whether it includes some vehicles that are not properly included. If the Court takes the position that vehicles can never count, then we lose. I'm not saying that vehicles can never count. Right. It's saying that a statute that includes vehicles that can count and vehicles that can't doesn't qualify under Taylor. The vehicles, again, I'll go to the Sparks case as my support here. If the vehicles are modified in such a way that they become the equivalent of a building, in that case a dwelling or accommodation for use overnight, then they are the equivalent of a building. The question is what is Oregon, is that what Oregon is doing? In other words, when is it the equivalent of a building? And so, for example, if you have a vehicle that, you know, it's not a trailer on a platform, but it's perfect, you can take off by itself, but is, I don't know, a milk truck or something where people come and transact business in the old days and buy milk from a truck that's sitting in front of the house, how does that count for Oregon law? Under Oregon law, it probably wouldn't qualify. Why? Well, because the Oregon cases have been restrictive in terms of it has to be the equivalent of a place where people routinely go inside and use that as a, you know, they'll use the term habitation. People go up the back steps and buy a bottle of milk, that counts or doesn't count? No, it does not count. I can't see why. Do you have to win this argument to win your case? No. But I'd like to re-win the Cunningham case. I'm having more and more trouble seeing what dwelling has to do with it. I looked at the wording of Taylor again, and it says building or other structure, and it cites LaFave and Scott, the treatise. And then it says some statutes, basically it says go too far, further than generic burglary by including automobiles, vending machines, hooves, tents, boats, vessels, railroad cars. I'm thinking people sleep in their cars all the time when they're between apartments. They put up tents just so that they can sleep in them, and people sleep in vessels all the time. Fishing vessels typically have sleeping quarters under the cabin, and people sleep in railroad cars all the time. It looks as though generic burglary isn't just broader than common law burglary. It has nothing to do with it. So I can't see where protecting people who may dwell there has anything to do with it. Well, the – Taylor goes into – goes to great lengths to describe what happens, the violence that occurs when burglaries, the potential violence that can occur, either burglary of a building or of a commercial. Pardon me? What words are you looking at in Taylor? All of the discussion of the legislative history in Taylor, where they're talking about the purpose is to make it the equivalent of a violent crime, and that's why it's characterized as a crime of violence or a violent crime, because of the high danger of conflict in a home or in a business or outside in case you're caught outside. I'm interested in your response to counsel's argument about Almendarez-Torres. Yes. And its applicability. It seems to – we have a case in immigration context, Kobe and Sandoval, that seems to now require that the indictment state the particular date so that the jury can find the sequence of events. It seems to me he's making an analogous argument on that. What's your response to that? Well, first I would point you to the Shepard case, because there the Supreme Court was very careful to not use police reports, limit it to court documents, things that relate to the fact of the conviction. And the fact of the conviction in the Shepard case included the charging instrument and the judgment and the plea colloquy. The case that I'm going to cite you to is the Fourth Circuit case, U.S. v. Thompson, that Mr. Sady included in his supplemental authorities. Judge Wilkinson's decision there is very thorough and deals with the exact issue that Mr. Sady is raising here today, and that is whether the convictions are – occurred on – the crimes occurred on separate occasions. And I don't – I won't read it to you or anything here, obviously, but Judge Wilkinson does a good job of explaining why, after Shepard in particular, it is not a violation of anybody's Fifth or Sixth Amendment rights for the court to determine the Armed Criminal Act, the predicate convictions, and also the requirements for accounting them. That's just part of examining the fact of the conviction, including whether they occurred on separate occasions. Does that answer your question? The Thompson case is the best case I can come up with. I'm trying to – No, no. I'm just trying to think whether that still requires – I mean, whether it applies in both the categorical approach or it would only apply when you're getting to the modified categorical approach. I think it applies in the modified categorical approach. The best case for the categorical approach now is Duenas-Alvarez, where it's not enough to simply imagine the possibilities. You have to look at the operative law of the State and see if there is a realistic probability that something is outside the generic category. Even if the language is plain? I would submit that the Oregon language isn't plain, and that's why it's had to be interpreted several times over the last 30 years. If you fail on your argument to preserve Cunningham and we have to get to the modified categorical approach, the district court never decided it at all. I'd like to know your views on that. And second, what is it about the documents that were submitted to the district court, the conviction records, that demonstrate that they necessarily show that he was convicted of generic burglary? Okay. It is possible you could remand, but I think, as Judge Coleman points out, you can look at the documents and see whether they are sufficient to show that it fits within generic burglary. It's a legal question, not a factual question per se. It's a legal question whether they're sufficient to show that it fits within generic burglary. The documents, you're asking me to comment on each one individually? Well, which are the three that show that, which are the three convictions that demonstrate that he has three prior serious felonies? Let me preface it with one little caveat, and that's not a big caveat, but a helpful point, and that is you have to look at these with common sense. That's what this Court, the panel, said in the Reyna's decision. It's a common sense approach. It's not an epistemological approach. I don't have any problem with that. But you're trying to figure out how you know something. Using common sense, how do they necessarily, you know, they show necessarily that he was convicted of a generic burglary. Okay. The first one is the Texaco. It gives a street address, first of all, in this Court in the Kilgore case, so that's a very compelling factor when a street address is given, because vehicles and boats and other impermissible things don't have street addresses. And we know that it's the stations with kiosks, too. Do they? I don't know if they do or not. They do in my town. I don't know how you know. This is in Klamath Falls. Just with respect to street addresses, how do you respond to our recent decision in Martinez-Martinez, where we said that similarly the fact that a street address is given where Martinez-Martinez committed his crime is no way by itself unequivocally establishes that the structure in question was currently inhabited. Not unequivocally. I think it's a factor, though, in the Court. It's one of several factors. And when it states a business, as it did, if I can go on to the second exhibit, there we have a street address, 1737 Avalon in Klamath Falls. And there's no doubt it's Skipper's Seafood and Chowder House. And it even describes what he did. He broke out a window, pried open the cash register, and attempted to pry open the safe. I think that's a pretty clear one there. Exhibit three is the Paisley Mercantile. A mercantile is a general store. It's very common in western states. That's the dictionary definition of a mercantile. And this isn't in the record, but the Paisley Mercantile is a virtual historic monument. It's very famous in the little town of Paisley. Is that something you could take judicial notice of? Paisley Mercantile? No, but you can take judicial notice of the fact that mercantiles are general stores. Do any people know what general stores generally are? Since the controversy over the Little League concession stand and the Hendricks property is such, I'll pass over those and get to a couple of others that I think are pretty compelling. And that is exhibit number six, the Frito-Lay Storage Building. Very common sense. We call buildings buildings. The entire state building, the Chrysler Building. And this is called the Frito-Lay Storage Building. There's no indication whatsoever that that's anything but the ordinary meaning of the term building under a common sense interpretation. And adaptation is irrelevant. A building is a building when you describe it in that fashion. Exhibit number seven is the U-Lock Storage Building, U-Lock Storage Unit number 74. Now, here, Oregon case law has been very careful to circumscribe storage lockers. The kind of lockers you see at Greyhound bus stations are not buildings in Oregon. Each unit is a building, right? Pardon me? Each storage unit is a building? Yes. For purposes of the burglary statute, each unit is a building just as a room would be a building inside a normal building. For purposes of the burglary statute, so that if you, you know, burglarize one room but not another, you'd still have a burglary even though you were in a small part of the overall building. The definition of building in Oregon is to burglarize two units, storage units right next to each other. You'd burglarize two buildings. You'd have two counts there. I don't know if you necessarily have two sentences. If you're inside a building and if you're inside what we would ordinarily call a building but there is a room next to it and you go into that room, that's a burglary? You're already inside the building? Right. That's a separate burglary if it's two different. If you're legitimately inside the larger building? Well, if it's, you know, the same house, you wouldn't have a separate burglary. I don't understand. Separate apartments are separate. If you're in a rooming house and you went in from one room to the next, that would be a separate burglary. But the important thing with Government Exhibit Number 7 is that this is something that has been specifically interpreted by the Oregon Court of Appeals in the Barker decision where it says it has to be big enough to allow humans to enter and move about inside. That is not the same thing as a small storage locker. That is a pretty good-sized storage locker, the kind that are common with apartment buildings. And in this case, it could be lawfully inside the building that contains the unit and the burglary is going into the unit. Right. Each unit is protected, in other words, in a storage facility by Oregon law. What if the unit is an ocean-going container? Those are used in new storages. Isn't that a vehicle? Under Oregon law, probably not, because they're not specifically adapted for business purposes, unlike the Nolan case, I think it was, the trailer had been specifically adapted. And that's why the Oregon cases that I cited are important. I don't understand why that's not as specifically adapted for business purpose as a storage unit. The unit itself? Well, under Oregon law, you have to do something to it besides just use it for transportation purposes. Even if it's a commercial unit, it still hasn't been adapted. He's paying rent to store the stuff in there. From a landlord's point of view, that's commercial. Right. But under Oregon law, there has to be an adaptation. There has to be a change in the thing itself to make it something besides just a transportation vehicle. But the adaptation does not have to make it not a transportation vehicle, right? In other words, it could still move around. Oh, exactly. So if I buy a modular unit designed as a hot dog stand that also has a place where you can sleep, whole deal, well, leave out the place where you can sleep, but a modular hot dog stand where a person can be inside it and move around to put the hot dogs on the grill and sell them out the window. Because I bought it modular and didn't do anything to it, it's not protected from burglary under Oregon law. But if I build some wooden steps and hang an umbrella outside, then it is. Is that right? Well, I think it would qualify from the beginning because when it was constructed, what was originally a vehicle had been adapted into something for business and accommodation purposes. So, again, it's something that started out that way. It was adapted from the start. Well, it was ordinarily a vehicle. I'd like to have some sense to this. Besides, if you commit misdemeanor trespassing, we may charge it as felony burglary depending on how we feel about you. Well, that's where the Duenas-Alvarez case comes in, Your Honor, because that's more or less a burden on the other party to show that it is being used in that way. And the Oregon cases show that it's not being used that way. Do you think you need more under Duenas-Alvarez and that the particular individual has himself been convicted of something that would not qualify, like the burglary of a Little League stand? Do you have to go find the cases of other people when you find that the defendant himself has been convicted of a statute applied that way by Oregon officials? We're dealing in Duenas-Alvarez with finding hypotheticals. Yeah, but here's the reality. It's a reality, but we don't know all the facts. That's why, under the modified categorical approach, perhaps it shouldn't be considered, but there's several others that take its place. All right. So that leads to my question, which is, doesn't Shepard and Duretsky lead to the conclusion that we have to be very careful about, because of the Almendarez stories and where it starts spilling over into Apprendi and Blakely and so on, into being very stringent about not getting anything more out of the documents that is absolutely apparent from them? Because after that, you start running into factual determinations and you start unraveling the whole Almendarez-Torres problem worse than it's already unraveling. Right. And that's what Justice Souter's opinion does in Shepard. Right. It limits it to that. Therefore, if we don't know anything about it, if we don't know the facts with regard to the Little League stand, doesn't that cut in favor of the defendant? If we don't know the facts, we have to assume against you, because otherwise we're going to run into a situation where we need to have a jury trial. You just discount that one and don't. I'm not saying you have to use it in this case. There are plenty of others to use for the three.  I mean, if you have doubts, don't use it. Well, my question really builds off Judge Reinhardt's. And therefore, as far as we can tell, this person has been convicted of a case in which the structure or the non-structure would not qualify under Calumny. We need to assume that, or else we're running right into a prendix. Mr. Pifer, you never answered the question that came from back here somewhere. Which of these seven are your best three? Are my best three? I think I have four or five, actually. Which are your best three? We only need three. Best three. So we just want to know which are the strongest. I think the Paisley-Mercantile is. The Skippers one is. The Skippers. And what's the third? And the Skippers. The Frito-Lay. Judge Kleinberg doesn't like the Fiasce. I won't use that one. I was wondering if we could avoid all the hard questions by using the Frito-Lay storage building, the Skippers, Seafood, and the Paisley-Mercantile. And also the Frito-Lay storage building, I would certainly consider that one. And since storage units have been specifically interpreted by Oregon law in the Barker case, the ULOC storage one as well. We're looking at the documents. Right. We don't know that from looking at the documents. After this argument, we go back and we say, okay, we want to do this ourselves or remand it. He likes Frito-Lay. Which three would you just say we should look at because we don't have to look at anything else other than the facts of the conviction and the documents in the record? Again, the Frito-Lay storage building, the Paisley-Mercantile, and the Skippers. Those are the three best. I think there are others, too, but those are the three best. Any further questions? I just want to know, why can't we just go back to Judge Graber's question? She recited the portion at page 599 of Taylor that says that a person has been convicted of burglary for purposes of this enhancement. If he is convicted of any crime, regardless of his exact definition or label, having the basic elements of unlawful, unprivileged entry into or remaining in a building or structure with intent to commit a crime, and then look to the language of Oregon revised statute section 164.215, which says a person commits the crime of burglary in the second degree, if the person enters or remains unlawfully in a building with intent to commit a crime therein, and conclude under the Taylor categorical approach, he meets it. End of analysis. Enhancement applies. We're done. That is exactly what this Court did, or the panel with Judge Scopel and Judge Tang and I forget, Judge McKibbin. That's what they did in 1990. So Cunningham was good law then? They looked at the statute as the Supreme Court had just told them to do on a remand. So Cunningham was good law then. It's good law today. Yes. And we can apply Taylor to Mr. Gristle's case. That's your basic position. If you take too literal an approach, then people who live in motorhomes, people who live in recreational vehicles, and people who operate their entire business out of a converted bus, for example, they're not going to be, that would not apply to them. And that's just not a tenable situation to accept, considering the fact that one of the purposes of the Taylor decision by the Supreme Court was to give a broader noncommon law definition to burglary and not restrict it so much. Otherwise, you start eliminating more and more State statutes, and that wouldn't be acceptable. Thank you. The matter just argued is submitted for decision. The Court's calendar for this session, the Court's calendar is adjourned. Thank you.
judges: Schroeder, Pregerson, Reinhardt, Rymer, Kleinfeld, Hawkins, Tashima, Graber, Wardlaw, Gould, Paez, Berzon, Tallman, Rawlinson, Bea, Cjj